IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MAJDI ABUGEITH and JIMMY BREWER, §
Individually and on Behalf of §
All Others Similarly Situated, §
§
Plaintiffs, §
§ CIVIL ACTION NO. H-17-2934
v. §
§
FLOWERS FOODS, INC. and FLOWERS §
BAKING CO. OF HOUSTON, LLC, §
§
Defendants. §

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Majdi Abugeith and Jimmy Brewer ("Plaintiffs"), on behalf of themselves and other similarly situated individuals, bring this action against defendants Flowers Foods, Inc. and Flowers Baking Co. of Houston, LLC (collectively "Flowers" or "Defendants") under the Fair Labor Standards Act ("FLSA").[1] Pending before the court is Defendants' Motion to Dismiss or, in the Alternative, to Compel Individual Arbitration ("Defendants' Motion to Dismiss") (Docket Entry No. 5). For the reasons stated below, the court will grant Defendants' Motion to Dismiss.

**I. Background[2]**

Flowers Foods, Inc. ("Flowers Foods") ships bakery and snack products to warehouses. Flowers Baking Co. of Houston is a

---

[1] See Plaintiffs' Original Complaint ("Complaint"), Docket Entry No. 1.

[2] See id. at 6-11 ¶¶ 23-50.

subsidiary of Flowers Foods that operates one of Flowers Foods' bakeries and several of its warehouses. Defendants market their bakery and snack products to retailers such as Wal-Mart, Target, Dollar General, and other grocery stores and merchants. Plaintiffs and members of the proposed class distribute Defendants' products to Defendants' retail customers and place, remove, and organize Defendants' products on the retailers' shelves. Plaintiffs allege that "[b]ecause they were misclassified as non-employees, Plaintiffs and members of the proposed Federal Collective Group were denied the rights and benefits of employment, including, but not limited to overtime premium wages."[3]

Plaintiffs executed a distributor agreement and signed Flowers Baking Co. of Houston, LLC ("Company") Amendment to Distributor Agreement ("Amendment").[4] The Amendment contains an arbitration provision that states:

> **Mandatory and Binding Arbitration**: All claims, disputes, and controversies arising out of or in any manner relating to this Agreement or any other agreement executed in connection with this Agreement, or to the performance, interpretation, application or enforcement hereof, including, but not limited to breach hereof and/or termination hereof, which has not been resolved pursuant to any negotiation and mediation provisions in the Agreement or otherwise shall be submitted to individual binding arbitration in accordance with the terms and conditions set forth in the Arbitration

---

[3]Id. at 11 ¶ 47.

[4]Exhibits A and B to Appendix of Motion to Dismiss, or in the Alternative, to Compel Individual Arbitration ("Defendants' Appendix"), Docket Entry No. 5-1, pp. 4-7, 13-16.

such claims, disputes, and controversies as specifically excluded therein.[5]

Plaintiffs each signed an Arbitration Agreement contained in Exhibit 2 of the Amendment.[6]

Plaintiffs filed this action on September 29, 2017, seeking overtime wages under the FLSA, liquidated damages, attorney's fees, and costs on behalf of themselves and a putative class of distributors.[7] Defendants filed a motion pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6) seeking an order dismissing the lawsuit and requiring Plaintiffs to arbitrate their claims with Defendants.[8]

## II. **Analysis**

Defendants argue that because Plaintiffs signed the Amendment and the Arbitration Agreement -- which require mandatory, individual arbitration of the claims and delegate the power to decide questions of arbitrability to the arbitrator -- the court should dismiss Plaintiffs' claims and compel individual arbitration.[9] Plaintiffs respond that the arbitration agreements

---

[5] Id. at 6, 15.

[6] See Arbitration Agreement, Exhibit 2 to Amendment, Docket Entry No. 5-1, pp. 8-10, 17-19.

[7] Complaint, Docket Entry No. 1, pp. 12-13 ¶ 59 and Prayer for Relief.

[8] See Defendants' Motion to Dismiss, Docket Entry No. 5.

[9] Id. at 10-17.

are illusory and thus invalid, and that the collective action procedure cannot be waived.[10]

## A. Enforceability of the Arbitration Agreement and the Delegation Clause

### 1. Applicable Law

Under the Federal Arbitration Act ("FAA") an arbitration agreement in a contract evidencing a transaction involving interstate commerce is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Underlying the FAA is "the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks omitted); see Washington Mutual Finance Group, LLC v. Bailey, 364 F.3d 260, 264 (5th Cir. 2004) ("The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts -- no more and no less.").

Arbitrability is a threshold question to be determined at the outset, prior to deciding conditional certification. Edwards v. Doordash, Inc., Civil Action No. 17-20082, 2018 WL 1954090, at *3 (5th Cir. April 25, 2018) (citing Reyna v. International Bank of Commerce, 839 F.3d 373, 377-78 (5th Cir. 2016)). In determining whether to enforce an arbitration agreement "[f]irst, the court

---

[10]Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss, or in the Alternative, to Compel Individual Arbitration ("Plaintiffs' Response"), Docket Entry No. 9, pp. 3-5.

asks whether there is a valid agreement to arbitrate and, second, whether the current dispute falls within the scope of a valid agreement." Id. (citing Klein v. Nabors Drilling USA L.P., 710 F.3d 234, 236 (5th Cir. 2013)). If the party seeking arbitration argues that there is a delegation clause, the court performs the first step of the analysis to determine if an agreement to arbitrate was formed, then determines if it contains a valid delegation clause. Id. at *3-4.

> If there is an agreement to arbitrate with a delegation clause, and absent a challenge to the delegation clause itself, we will consider that clause to be valid and compel arbitration. Challenges to the arbitration agreement as a whole are to be heard by the arbitrator. Arguments that an agreement to arbitrate was never formed, though, are to be heard by the court even where a delegation clause exists. See Kubala v. Supreme Products Services, Inc., 830 F.3d 199, 202 (5th Cir. 2016). Since Kubala, we have reiterated that the first step of the test is limited to contract formation.

Id. at *4. If the parties have entered into a binding agreement to arbitrate, the court must determine whether any federal statute or policy renders the claims nonarbitrable. JP Morgan Chase & Co. v. Conegie ex rel. Lee, 492 F.3d 596, 598 (5th Cir. 2007). The party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity. Carter v. Countrywide Credit Industries, Inc., 362 F.3d 294, 297 (5th Cir. 2004). A court should resolve all doubts concerning the arbitrability of claims in favor of arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 105 S. Ct. 3346, 3353-54 (1985).

2. Application

The court must first decide whether an agreement to arbitrate was formed. Plaintiffs argue that the Arbitration Agreement is illusory because it states that "[t]his Arbitration Agreement may be modified or terminated by COMPANY after thirty (30) days written notice to DISTRIBUTOR."[11] Plaintiffs argue that by this provision Defendants have "retained the power to terminate the contract at-will."[12] Defendants respond that the Arbitration Agreement is not illusory because the next sentence states that "[a]ny modifications or terminations shall be prospective only and shall not apply to any claims or disputes that are pending in arbitration or that have been initiated by either party pursuant to the AAA Rules."[13]

Since arbitration agreements are matters of contract, the validity and scope of such agreements are governed by state contract law. Morrison v. Amway Corp., 517 F.3d 248, 254 (5th Cir. 2008). An arbitration agreement is not illusory under Texas law if it requires "notice of any modification or termination and state[s] that any such amendment would apply prospectively only." J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 230 (Tex. 2003) (citing

---

[11] Id. at 3; Arbitration Agreement, Exhibit 2 to Amendment, Docket Entry No. 5-1, p. 10.

[12] Plaintiffs' Response, Docket Entry No. 9, p. 4.

[13] Defendants' Reply to Plaintiffs' Response Regarding Defendants' Motion to Dismiss or to Compel Arbitration ("Defendants' Reply), Docket Entry No. 11, p. 4; Arbitration Agreement, Exhibit 2 to Amendment, Docket Entry No. 5-1, p. 10.

-6-

In re Halliburton Co., 80 S.W.3d 566, 569-70 (Tex. 2002)).[14]
Because the termination provision in the Arbitration Agreement requires thirty days written notice and because any modifications or terminations will be prospective only, the Arbitration Agreement is not illusory under Texas law. Plaintiffs have therefore failed to carry their burden of showing that the Arbitration Agreement is invalid. The court concludes that the parties have entered into a binding agreement to arbitrate their dispute and that no federal statute or policy renders the claim nonarbitrable.

The court must next decide whether the Arbitration Agreement contains an enforceable delegation clause. The Arbitration Agreement states:

> Any issues concerning arbitrability of a particular issue or claim under this Arbitration Agreement (except for those concerning the validity or enforceability of the prohibition against class, collective, representative, or multi-plaintiff action arbitration and/or applicability

---

[14]In Halliburton the Texas Supreme Court confronted facts and arguments similar to those now before the court. An employee argued that a mandatory arbitration clause was illusory because Halliburton, the employer, had retained the right to modify or terminate the program. Id. at 569. Rejecting this argument, the Texas Supreme Court relied on two key provisions: One stated that "no amendment shall apply to a Dispute of which the Sponsor [Halliburton] had actual notice on the date of amendment"; the other stated that any termination of the arbitration program "shall not be effective until 10 days after reasonable notice of termination is given to Employees or as to Disputes which arose prior to the date of termination." Id. at 569-70 (internal quotation marks omitted). Because of this language, the court held that Halliburton could not "avoid its promise to arbitrate" by amending or terminating the agreement. Id. at 570. The agreement was therefore not illusory. Id.

of the FAA) shall be resolved by the arbitrator, not a court.[15]

The Arbitration Agreement also incorporates the American Arbitration Association ("AAA") rules, which give the arbitrator the power to determine arbitrability.[16] See Rule 7, Commercial Arbitration Rules and Mediation Procedures, AMERICAN ARBITRATION ASSOCIATION, p. 13 (2013) ("The arbitrator shall have the power to rule on his or her own jurisdiction, . . ."); Crawford Professional Drugs, Inc. v. CVS Caremark Corp., 748 F.3d 249, 262-63 (5th Cir. 2014) ("express incorporation of the same AAA Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."). The court "must treat [the delegation clause] as valid absent any specific challenge to the delegation clause by [Plaintiff]." Edwards, 2018 WL 1954090, at *5. Plaintiffs challenge the Arbitration Agreement as a whole, but do not specifically challenge the delegation clause. The court concludes that the Arbitration Agreement and the delegation clause submitting any issues of arbitrability to the arbitrator -- except the enumerated exceptions -- are valid, and Plaintiffs should be compelled to arbitrate.

---

[15]Arbitration Agreement, Exhibit 2 to Amendment, Docket Entry No. 5-1, pp. 9, 18.

[16]Id. at 8, 17 (". . . in conformity with the Commercial Arbitration Rules of the American Arbitration Association . . . .").

## B. Class Action Waiver

The Arbitration Agreement states that "**BOTH PARTIES EXPLICIT[L]Y WAIVE ANY RIGHT TO: (1) INITIATE OR MAINTAIN ANY COVERED CLAIM ON A CLASS, COLLECTIVE, REPRESENTATIVE, OR MULTI-PLAINTIFF BASIS EITHER IN COURT OR ARBITRATION; . . . .**"[17] Because matters "concerning the validity or enforceability of th[e] prohibition against class, collective, representative, or multi-plaintiff action arbitration" are not to be resolved by the arbitrator, the court must determine whether Plaintiffs have waived class arbitration.[18] Defendants argue that Plaintiffs' claims are subject to individual arbitration because the Amendment and the Arbitration Agreement state that parties agree to "individual arbitration" and because the parties explicitly waived class arbitration and litigation in the Arbitration Agreement.[19] Plaintiffs respond that they "should not be forced to implicitly sacrifice presumably **non-waivable** rights to collective action under the Act simply because their claims will be heard in an arbitration forum."[20] Defendants reply that the collective action procedure is

---

[17]Id. at 9, 18.

[18]Id. Neither party disputes that the court should decide this issue.

[19]Defendants' Motion to Dismiss, Docket Entry No. 5, pp. 13-14; Amendment, Exhibits A and B to Defendants' Appendix, Docket Entry No. 5-1, pp. 2, 4; Arbitration Agreement, Exhibit 2 to Amendment, Docket Entry No. 5-1, pp. 9, 18.

[20]Plaintiffs' Response, Docket Entry No. 9, p. 5.

not a substantive right and it can be waived in an arbitration agreement.[21]

The Supreme Court has upheld class-action waivers in arbitration agreements. See Concepcion, 131 S. Ct. at 1746-47 (invalidating the Supreme Court of California's rule, which had classified most collective-arbitration waivers in consumer contracts as unconscionable and holding that the rule was preempted by the Federal Arbitration Act); DIRECTV, Inc. v. Imburgia, 136 S. Ct. 463, 467, 471 (2015) (holding that the FAA preempted California law, making the class-action waiver in the arbitration agreement enforceable); see also D.R. Horton, Inc. v. N.L.R.B., 737 F.3d 344, 357, 363 (5th Cir. 2013) (holding that "[t]he use of class action procedures . . . is not a substantive right" and that arbitration agreements containing class waivers are enforceable).

Because the Arbitration Agreement contains a class-action waiver and because the Arbitration Agreement and the class-action waiver are enforceable, the court concludes that Plaintiffs must submit to individual arbitration. The court will therefore grant Defendants' Motion to Dismiss and compel Plaintiffs to arbitrate this dispute individually. See Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.").

---

[21]Defendants' Reply, Docket Entry No. 11, pp. 6-7.

## III. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss or, in the Alternative, to Compel Individual Arbitration (Docket Entry No. 5) is **GRANTED**.

**SIGNED** at Houston, Texas, on this the 15th day of May, 2018.

/s/ Sim Lake
SIM LAKE
UNITED STATES DISTRICT JUDGE